ABBOTT, Appellant and Cross–Appellee,

v.

JARRETT RECLAMATION SERVICES, INC.
et al., Appellees and Cross–Appellants.

[Cite as *Abbott v. Jarrett Reclamation Serv., Inc.* (1999), 132 Ohio App.3d 729.]

---

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 96–BA–36.

Decided March 15, 1999.

*John G. Paleudis* and *Michael P. McCormick,* for appellant and cross-appellee.

*Stanley G. Burech* and *Donna L. Crow,* for appellee and cross-appellant Jarrett Reclamation Services, Inc.

*Jack R. Baker* and *Gregory A. Beck,* for appellee and cross-appellant David Black General Contracting, Inc.

Cox, Presiding Judge.

The present appeal arose on the death of Bradley J. Abbott, who died in the scope of his employment when the side of a deep trench that he was working in caved in and buried him. Among others, Abbott's wife ("plaintiff") sued the general contractor, David Black Contracting Services, Inc. ("Black"), and the subcontractor who employed her husband, Jarrett Reclamation Services, Inc. ("Jarrett"). After five days of trial by jury, the trial court granted directed verdicts in favor of both Black and Jarrett.

On November 21, 1991, the village of Clarington ("Clarington") awarded a contract to Black to construct a sewer system within its village. Clarington also hired engineers William Brake and Valiant Roxby to oversee and monitor the project. Chris Simon was the resident project representative on site every day on behalf of Brake and kept a daily construction report. Inspections of the site were also made by the Army Corp of Engineers.

As general contractor, Black was responsible for the entire project, which included installing the main sewer line to the wastewater treatment plant and installing lateral lines connecting the buildings and residences to the main line. On March 6, 1992, Black hired Jarrett to complete those parts of the project not able to be completed by Black or J & R Construction Company, another subcontractor. Black informed Rick Jarrett, the owner of Jarrett, that lateral work would be involved in his subcontractor duties as well as reclamation work. When Black gave Rick Jarrett a copy of their subcontract, it attached a copy of the specifications for the project, which included details of the trench work to be done by Jarrett, as well as the depths of the trenches. Black also attached a copy of safety procedures in excavation.

Biweekly construction meetings were held between Black, the engineers, and others to discuss and plan each progressing part of the project. On October 15, 1992, a construction meeting was held on the part of the project that subsequently involved Abbott's death. Rick Jarrett attended this meeting and also traveled to the site of Bob's Bar to observe the location where the work would be done.

Jarrett's crew on most of the project consisted of Jerry Clark, who operated the backhoe, and Abbott, the general laborer. Before this project, Rick Jarrett had never excavated a trench deeper than five feet and owned no safety equipment for digging trenches deeper than five feet. Jarrett had been working on the project for a few months before the accident occurred and had already installed a number of laterals and excavated one or two trenches deeper than five feet deep without safety equipment.

In March 1992, Black installed a main line into the ground along the side of Bob's Bar and planted a six-inch lateral from the main underneath the street and the asphalt parking lot ending behind Bob's Bar. Black capped the end of the lateral and refilled the trench. Black placed a location reference marker that protruded out of the ground at the main line. On the morning of October 29, 1992, the Jarrett crew was to work behind Bob's Bar to connect three structures including the bar with a lateral to the main sewer line already installed by Black. The lateral line ran behind the bar and then turned ninety degrees to run alongside it to the main sewer line toward the street.

Clark and Abbott arrived early that morning and Clark began digging with the backhoe along the side of the bar to locate the main line installed by Black. Clark excavated a long trench. Abbott jumped into the ditch with a shovel to dig and precisely locate the main without breaking it as a backhoe would. Clark and Abbott then worked at the other end of the trench seeking to locate the pipes coming out of the structures for the hookup to the lateral. At about this point, Rick Jarrett arrived on the scene.

Clark and Abbott had difficulty locating the outlet pipes from the buildings and Simon arrived to help the Jarrett crew locate these. Simon, Clark, and Abbott went into the basement of one of the buildings to see if they could locate approximately where the lines were. Conflicting testimony was presented as to whether Jack Schoolcraft, one of Black's supervisors, had stopped at the scene that morning to help locate the outlets. It was undisputed that Schoolcraft was somewhere on the project site that day and was available if help was needed. Upon finding no direction as to the location of the lines, Clark started digging behind the bar with the backhoe to find a line.

After digging a trench behind the bar that was approximately thirty feet long and four feet deep, Abbott jumped into the ditch, dug around with a shovel, and located the lateral tie-in. Abbott and Rick Jarrett then left while Clark contin-

ued digging around the corner of the bar toward the street to find the main line marked above ground by Black. Clark extended the trench to fifty feet long when Abbott, Rick Jarrett, and Simon returned to have lunch. Clark finished his lunch first and again began digging to uncover the main line on the side of the bar. Most of the areas inside this trench were deeper than five feet and the ditch was approximately twenty inches wide. No safety measures or trench boxes were placed in the trench, nor was the trench sloped so that a means of egress existed. Clark piled the earth he removed from the trench immediately next to the left side of the trench. Rick Jarrett left the scene after lunch.

While Clark was digging the trench, he noticed Abbott in the trench walking toward him with a shovel. Clark returned to his digging when he saw Abbott running up the ditch. Clark then saw the ditch crack and the bank of the trench cave in on Abbott. Clark jumped in to dig Abbott out, and others aided in the rescue attempt. Abbott's body was eventually recovered.

On October 19, 1993, plaintiff brought a lawsuit alleging intentional tort against Jarrett, and a wrongful death and survivorship action against general contractor Black, the village of Clarington, and the engineers hired by the village, Brake and Roxby. Jarrett, Brake, and Roxby filed answers, and Black filed an answer and cross-claim against Jarrett. Clarington also filed an answer and cross-claim against all of the other defendants in the complaint. Discovery began in the case. On June 24, 1994, Clarington filed a motion for summary judgment arguing that governmental immunity applied under R.C. 2744.02(A)(1) to bar the lawsuit. The trial court granted the motion. On July 18, 1994, Black filed a motion for summary judgment arguing that it had no duty as a matter of law to Abbott, as the employee of its subcontractor, because plaintiff failed to show that Black actively participated in Jarrett's work. Black also argued that Abbott knew that he was performing inherently dangerous work. Black attached supporting materials.

On September 12, 1994, Brake and Roxby filed a joint motion for summary judgment. On September 23, 1994, Jarrett filed a motion for summary judgment arguing that plaintiff failed to present evidence to prove that Jarrett committed an intentional tort. Plaintiff filed motions opposing the motions for summary judgment.

Extensive discovery continued on the case and there were extensive tangential motions filed by all parties.

On February 24, 1995, Clarington voluntarily dismissed its cross-claims against Brake and Roxby. On April 4, 1995, plaintiff voluntarily dismissed Brake and Roxby with prejudice, leaving only Jarrett and Black as the remaining defendants. On May 10, 1995, plaintiff filed a motion to amend her complaint to add a claim against Black for the negligent hiring and retaining of Jarrett as an

unqualified independent contractor. On July 12, 1995, the trial court granted plaintiff's motion to amend the complaint, which was subsequently filed on July 13, 1995. Black answered the amended complaint and filed a cross-claim against Jarrett. Jarrett timely answered the amended complaint and the cross-claim.

On September 13, 1995, the trial court granted Black's motion for leave to file a renewed motion for summary judgment based upon the new allegations in the amended complaint. Black filed his renewed motion on September 13, 1995, reiterating that a general contractor owes no duty to the employee of a subcontractor engaged in inherently dangerous work absent active participation and again cited and attached supporting materials. Black also raised lack of a duty as to the negligent hiring claim, arguing that a general contractor owed no such duty to the employee of a subcontractor engaged in inherently dangerous work. Black further asserted that it could not be aware of Jarrett's alleged incompetence at the initial hiring, as Jarrett had copies of the plans and safety requirements and had worked on the site for months before a problem occurred. Black also argued that plaintiff failed to show that Abbott relied on Black to hire a competent subcontractor.

On October 31, 1995, the trial court overruled Black's motion for summary judgment. On June 4, 1996, trial began in this matter and continued on June 5–7, and 11, 1996.

After plaintiff's opening statement at trial, Jarrett moved for a directed verdict, arguing that plaintiff failed to submit evidence of the elements of an intentional tort and that plaintiff erred in stating that the evidence would show that Jarrett should have known that putting a person in the ditch was substantially certain to cause harm. Jarrett also moved to dismiss Black's cross-claim against it. The trial court overruled the motion.

Plaintiff then presented her case in full, calling twenty-one witnesses who testified and were cross-examined. After plaintiff rested her case on June 12, 1996, Jarrett and Black each moved for a directed verdict. Both argued that plaintiff failed to present sufficient evidence to meet the elements of intentional tort with regard to Jarrett and failed to prove that Black owed a duty to Abbott. After hearing argument, the trial court granted directed verdicts in favor of both Jarrett and Black. The trial court stated:

"This court holds that the plaintiff has not proceeded with the sufficient burden of proof as to the first and second counts of the complaint; there was no evidence to substantiate the third count, which was the negligent hiring. Therefore, the court is directing a verdict for the defendants and against the plaintiff."

The court journalized its decision on June 17, 1996. Plaintiff filed a timely appeal raising three assignments of error. Black filed a responsive brief that

included a one-line contention that the trial court should have granted its renewed motion for summary judgment, as it included the same evidence that the trial court used in granting the directed verdict. Black filed a notice of cross-appeal. Jarrett did not file an appellate brief. Plaintiff's first assignment of error states:

"The trial court erred in directing a verdict for the defendants when there were at least four possible legal liability conclusions which reasonable minds (i.e. the jury in its discretion as the finder of facts) could have accepted as supporting a verdict against defendant Black, defendant Jarrett, or both defendants."

■ Plaintiff correctly asserts that this court's standard of review on a directed verdict is *de novo*; that is, to construe the evidence presented most strongly in favor of the nonmoving party and, after doing so, determine whether reasonable minds could conclude only against the nonmoving party. *Titanium Industries v. S.E.A., Inc.* (1997), 118 Ohio App.3d 39, 691 N.E.2d 1087, citing *Byrley v. Nationwide Life Ins. Co.* (1994), 94 Ohio App.3d 1, 18, 640 N.E.2d 187, 198. Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In *Wagner v. Roche Laboratories*, the Ohio Supreme Court held that " 'if there is substantial competent evidence to support the party against whom the motion [for directed verdict] is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.' " (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255, quoting *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320, 27 O.O.2d 241, 199 N.E.2d 562. The court also found that " '[a] motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.' " *Id.*, quoting *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 219, 58 O.O.2d 424, 426–427, 280 N.E.2d 896, 899. A court cannot weigh the evidence or evaluate the credibility of the witnesses in determining such a motion. *Id.* The court described a motion for directed verdict as a test involving whether the evidence presented contains the legal sufficiency to take the case to the jury and whether the evidence presents " 'substantial probative value' " to support the nonmoving party's claim. *Roche, supra*, at 119–120, 671 N.E.2d at 255–256, quoting *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68–69, 23 O.O.3d 115, 116–117, 430 N.E.2d 935, 937–938.

Based upon this standard, plaintiff contends in the first assignment of error that reasonable minds could have reached four possible verdicts when construing the evidence in a light most favorable to her. Because three of these theories involve finding that Black as general contractor possessed a duty to protect Abbott as an employee of the subcontractor Jarrett, we shall begin our analysis of this issue with the liability of Black as general contractor.

Plaintiff asserts that sufficient evidence was presented upon which a jury could have found Black liable for Abbott's death. First, Black actively participated in the action or decision leading to Abbott's fatal injuries. Plaintiff also submits that sufficient evidence was presented to demonstrate that Black had notice of the dangerous conditions under which Abbott was operating and Jarrett did not. Therefore, plaintiff submits that R.C. 4101.11 *et seq.* and the exception to the general rule discharging a general contractor's duty to the employees of a subcontractor should apply to impose a duty upon Black to Abbott. Based upon the law and a review of the record, this court finds that plaintiff has failed to present substantial probative evidence on the key element necessary to sustain her assertions: that Black actively participated in Jarrett's work on the trench.

It must be kept in mind that the primary responsibility for protecting the employees of an independent contractor lies with the employer, *i.e.*, the independent contractor. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 250, 512 N.E.2d 1165, 1168. In accord with this general rule, the Ohio Supreme Court set forth the following holding regarding the duty owed by one who engages an independent contractor to perform inherently dangerous work:

"Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor." *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 108, 51 O.O. 27, 29, 113 N.E.2d 629, 632.

However, in *Hirschbach v. Cincinnati Gas & Elec. Co.*, the court announced an exception to *Wellman* by holding that one who hires an independent contractor, actually participates in the subcontractor's job, and fails to remove a hazard that could have been removed with ordinary care can be held liable for the death of an employee of that independent contractor. (1983), 6 Ohio St.3d 206, 208, 6 OBR 259, 260–261, 452 N.E.2d 326, 328–329. The Ohio Supreme Court defined "active participation" to mean "that the general contractor *directed the activity which resulted in the injury* and/or gave or denied permission for the critical acts that led to the employee's injury, *rather than merely exercising a general supervisory*

*role* over the project." (Emphasis added.) *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 337, 650 N.E.2d 416, 420–421.

In *Cafferkey v. Turner Constr. Co.*, the court held that a general contractor who merely supervises and does not actively participate in the subcontractor's work does not owe a duty to the employees of a subcontractor who are injured in performance of inherently dangerous work. (1986), 21 Ohio St.3d 110, 113, 21 OBR 416, 418–419, 488 N.E.2d 189, 192–193.

Courts have held that R.C. 4101.11, the "frequenter" statute, imposes a duty on a general contractor when the employee of a subcontractor suffers injuries on the job. See *Cyr v. Bergstrom Paper Co.* (1982), 3 Ohio App.3d 299, 300–301, 3 OBR 345, 346–348, 444 N.E.2d 1349, 1351–1352. R.C. 4101.11 states:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

This places a duty upon employers to furnish a safe place of employment for employees and "frequenters" and requires employers to furnish and use safety procedures and devices.

However, where hazards are inherent and are necessarily present because of the nature of the work performed, recovery by an independent contractor against a general contractor under R.C. 4101.11 will be barred. *Michaels v. Ford Motor Co.* (1995), 72 Ohio St.3d 475, 478, 650 N.E.2d 1352, 1354–1355. In other words, if injury results while one is performing that work for which he was hired, the very performance of which contains elements of real or potential danger, recovery cannot usually be had. *Wellman* at 108, 51 O.O. at 29–30, 113 N.E.2d at 632. Further, the Ohio Supreme Court stressed that "active participation" is the legal test for determining whether a general contractor owes a duty to the employee of a subcontractor under R.C. 4101.11. *Michaels,* at 476, 650 N.E.2d at 1356, fn. 3. The court held that the question to ask is if the general contractor had custody or control of the injured employee, the employment, or the place of employment. *Id.* As in previous cases, the court in *Michaels* acknowledged that overall supervision and direction is necessary in a construction project but held that such action does not constitute active participation *per se. Id.* at 479, 650 N.E.2d at 1355–1356.

In the Supreme Court's most recent decision on general contractor liability to an employee of a subcontractor, the court reviewed relevant prior decisions on the subject, including those set forth above. *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 636–643, 693 N.E.2d 233, 239–244. The court distinguished *Hirschbach* from its other decisions by noting that it involved the general contractor's actual participation in the job operation of the subcontractor, while the other cases involved a general contractor's supervisory role over the subcontractor. *Id.* at 639–640, 693 N.E.2d at 241–242. The court found that *Hirschbach* focused on the control that a general contractor had over the work *area* of the subcontractor, while the other cases concerned the control of a general contractor over the subcontractor's work *activities*. *Sopkovich* at 639, 693 N.E.2d at 241.

Based upon a review of the record and evidence presented, plaintiff has failed to provide substantial probative evidence to show that Black, as general contractor, had a duty to protect Abbott as an employee of a subcontractor. Plaintiff contends that Black actively participated in the excavation of the trench because it directed Jarrett's job schedule and site location, had a supervisor frequently on the site, and held safety meetings and reminded workers to wear their hardhats when the Army Corp of Engineers inspected the site. Construing the record in a manner most favorable to plaintiff, reasonable minds could only conclude against her on the issue of active participation. David Black, owner of the company, and every member of Jarrett's crew, including Rick Jarrett himself, testified that Black did not direct Jarrett's previous trenching activities, nor did it direct or help excavate the October 29, 1992 trench. Everyone testified that Black did not tell Jarrett what safety or excavation equipment to use and did not tell it how or exactly where to dig the trench. No substantial competent evidence was presented to the contrary.

Further, while Black may have held biweekly meetings, supervised Jarrett's general activities, and had a supervisor on site to assist the subcontractors and offer advice and who could have stopped Jarrett's work under certain conditions, this is insufficient to establish active participation in the work itself. This establishes only the supervisory role of Black. Black did not provide direct assistance in the digging of this trench, and Jarrett admittedly retained overall control and authority to make its own trenching decisions.

Abbott additionally asserts that Black actively participated when it originally installed the main line near the road by excavating and refilling an area near where Abbott died. Two of plaintiff's expert witnesses testified at trial that when Black first installed the main line eleven months prior to Abbott's death, it may have disturbed the soil, which could have contributed to the cave-in of the nearby trench that buried Abbott. However, these experts acknowledged that the

original excavation did not occur at the trench where Abbott was found. Plaintiff's own experts testified that Black's original installation of the main line was not located at the same place where the cave-in occurred. Construing all of the evidence asserted on this assignment in a light most favorable to plaintiff, substantial evidence is lacking to establish anything more than a supervisory role of Black as the project's general contractor in the Jarrett excavation of the October 29, 1992 trench.

Further, Black neither gave nor denied permission for the critical acts that led to Abbott's death. The critical acts leading to Abbott's death were that he entered a trench deeper than five feet without a means of egress and without any safety measures or safety equipment present. Black was not informed that Abbott was in the deep trench, nor did it direct Abbott into the trench. Black did not direct or control the manner or method that Jarrett used to excavate the trench or Jarrett's surrounding work environment. Black did not deny permission for Abbott and Jarrett to use safety procedures and/or safety equipment to eliminate the hazard of deep trenching. Jarrett did not request such items and retained complete control over this aspect. Thus, Black did not actively participate in Jarrett's work.

Additionally, due to the inherent danger of working in or near a deep trench on a construction site, it is reasonable to presume that Abbott and/or Rick Jarrett had an appreciation of the dangerous conditions in which they were operating. While Rick Jarrett testified that he lacked experience in deep trenching and did not know the exact safety measures and equipment required in excavating a trench more than five feet deep, he knew or should have known that at least a potential danger existed in working in or near a deep trench. The Ohio Supreme Court has held that a subcontractor who works at a construction site is engaged in inherently dangerous work. *Michaels* at 478, 650 N.E.2d at 1354–1355, citing *Cafferkey* at 113, 21 OBR at 418–419, 488 N.E.2d at 192–193.

Rick Jarrett testified that upon contracting with Black, he received a copy of the contract, bid documents, and project specifications from Black, which Black testified included the construction plans, the excavations necessary to complete the project, including those deeper than five feet, and the safety requirements of trenching. Jarrett also acknowledged attending a few biweekly meetings and receiving copies of the minutes from the biweekly meetings he did not attend. Black testified that safety procedures were discussed in some of the meetings.

Clark also testified that Abbott had made the statement "[i]t would be heck ever to have to be—get buried alive and I'd never want to know" shortly before the cave-in that caused his death. This, unfortunately, demonstrates that Abbott himself appreciated the danger of being in the trench, and no contrary evidence was presented in the record or at trial.

In its supplemental filing to this court, plaintiff has cited the recent case of *Cefaratti v. Mason Structural Steel Co., Inc.* (1998), 82 Ohio St.3d 121, 694 N.E.2d 915, to support reversal and remand of the instant case. The court in *Cefaratti* summarily reversed the lower court decision and remanded the case for consideration under *Sopkovich, supra. Id.* at 121, 694 N.E.2d at 915. Since *Cefaratti* contained only a summary of facts in the dissenting opinions, plaintiff attached the memorandum in support of jurisdiction that was filed by *Cefaratti.* However, even reviewing the memorandum and the facts of *Cefaratti,* the latter case is entirely distinguishable from the instant case in that the general contractor in *Cefaratti* actually removed a safety feature at the exact site where the subcontractor was working. The instant case involved no removal of any safety feature by Black. Thus, the instant case fails to show an exercise of authority or control over the critical variables in Abbott's or Jarrett's work environment by Black.

Further, in *Cefaratti* the court does not elaborate on its reasons for reversal and remand except for reconsideration under *Sopkovich, supra.* In the instant case, we have already considered *Sopkovich* and find that Black did not have direct control over the work area or the work activities of Jarrett and did not otherwise actively participate in them. Further, Black did not grant or deny permission to Jarrett with regard to any critical act leading to Abbott's death.

■ Plaintiff also contends in her first assignment of error that the trial court erred in directing a verdict for Jarrett, as reasonable minds could have concluded based upon the evidence that Jarrett committed an intentional tort against Abbott.

It should first be noted that Jarrett has failed to file an appellee's brief in this matter. Pursuant to App.R. 18(C), this court may accept as true appellant's statement of the facts and issues presented in the brief and reverse the judgment if appellant's brief reasonably appears to sustain such action.

In addition, it is also important to note that the Ohio legislature enacted R.C. 2745.01 (employer's liability for intentional tort) on November 1, 1995 to supersede the effect of Ohio Supreme Court decisions, including *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, that previously controlled this issue. However, the legislature did not expressly make R.C. 2745.01 retroactive and, therefore, because plaintiff's claim was filed prior to the effective date of R.C. 2745.01, it is not applicable to this case. See R.C. 2745.01; *Nolan v. Ormet Corp.* (Sept. 10, 1997), Monroe App. No. 790, unreported, 1997 WL 567973.

In *Hannah v. Dayton Power & Light Co.,* the Ohio Supreme Court reviewed the history of its establishment of an employee's claim against his employer for intentional tort. (1998), 82 Ohio St.3d 482, 484–485, 696 N.E.2d 1044, 1045–1047.

The court first recognized such a claim in *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, when it found that an exception existed to the workers' compensation exclusivity doctrine, which allowed an employee to bring an intentional tort action against his employer. The protection afforded to employers under the Workers' Compensation Act has always been for negligent acts and not for intentional torts. *Nolan, supra.* To allow employers to escape liability under the Worker's Compensation Act for intentional conduct would be tantamount to encouraging such conduct, and this clearly cannot be reconciled with the purpose and spirit of the Act or the public policy of encouraging a safe work environment. *Nolan, supra,* citing *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722.

The Ohio Supreme Court first defined the term "intentional tort" in *Jones v. VIP Dev. Co.* as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." (1984), 15 Ohio St.3d 90, 95, 15 OBR 246, 250, 472 N.E.2d 1046, 1051. The court held that an employee need not prove that the employer possessed a specific intent to injure in order to prove an intentional tort where "the actor proceeds despite a perceived threat of harm to others which is substantially certain, not merely likely, to occur. It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct." *Id.* at 95, 15 OBR at 250, 472 N.E.2d at 1051. The legislature responded by limiting the scope of actions that employees could bring under the intentional tort exception against an employer.

In *Fyffe, supra,* at 118, 570 N.E.2d at 1112, the court established that an employee must show the following elements in order to prove the intentional conduct on the part of an employer:

"(1) [K]nowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."

The *Fyffe* court also reaffirmed that in order to sustain an intentional tort action against an employer, proof beyond that which is required to prove negligence and beyond that necessary to prove recklessness must be established. The court elaborated:

"Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the

probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Fyffe, supra,* at 118, 570 N.E.2d at 1112.

While it is true that Rick Jarrett previously worked for the Ohio Department of Natural Resources, he testified that he was never in a situation where individuals were required to go into the trenches. He also testified that he did not know the safety procedures for trenching. In fact, Rick Jarrett testified that the instant project was the first in which he had excavated a trench beyond five feet deep. He also testified that he did not feel uncomfortable while physically inside of the deeper trenches, including one that experienced a minor cave-in and the one in which Abbott was found. Plaintiff's own expert confirmed that Rick Jarrett was unaware of the harm that could result, and that Rick Jarrett was not competent to supervise this particular trench. Although he acknowledged that he received a copy of the contract with Black that included safety procedures on trenching, Rick Jarrett testified that he merely skimmed the documents.

Further, the testimony elicited by deposition and affidavits previously discussed in this opinion demonstrates that there was sufficient evidence offered to support a finding that Jarrett committed an act with the belief that injury was substantially certain to occur.

The critical acts that led to Abbott's death were that he entered a trench deeper than five feet without a means of egress and without the presence of any safety measures or safety equipment to eliminate the hazard of deep trenching. The evidence clearly establishes that despite the fact that Jarrett had knowledge of and received the safety procedures that pertained to the job in question, Jarrett did not request that such safety equipment be present on the job and retained complete control over this aspect. Consequently, Jarrett continued to have its workers, including Abbott, dig a trench over five feet deep when a cave-in was substantially certain to occur, without the benefit of proper safety equipment. The prevention of a tragedy such as occurred in this case is the exact reason why it is necessary to follow the safety procedures as provided.

The trial court erred in directing a verdict in favor of Jarrett, as reasonable minds could have concluded, based upon the evidence presented, that Jarrett committed an intentional tort against Abbott. Plaintiff has a viable cause of action against Jarrett and we remand for further proceedings as against Jarrett.

The second assignment of error alleges:

■ "The trial court erred in directing a verdict for defendant Black when there was some evidence of record to support a finding that defendant Black negligently hired defendant Jarrett."

Plaintiff submits that the trial court applied the wrong legal standard in determining that plaintiff failed to meet the elements of negligent hiring and asserts that the correct legal standard is that "an employer who engages an independent contractor with either actual or constructive knowledge that the contractor does not possess that measure of skill required for the proper performance of the work is liable for negligence in hiring the incompetent contractor." (Citations omitted.) *Fitzpatrick v. Miller Bros. Constr., Inc.* (Sept. 4, 1986), Adams App. Nos. 428, 429 and 439, unreported, 1986 WL 9646. Plaintiff contends that negligent hiring was proven with the sufficiency to allow the issue to be decided by the jury.

In support of the negligent hiring claim, plaintiff points to David Black's testimony that he was required to have a knowledgeable safety supervisor present on site even at the subcontractor sites and that his supervisor for Jarrett was Rick Jarrett. Plaintiff's expert witnesses confirmed that neither Rick Jarrett nor his crew were qualified to excavate trenches beyond five feet. Plaintiff also argues that the lower court erred in excluding the deposition of Richard Butler, an individual who could establish that Abbott had relied on Black to require the use of proper safety equipment by the subcontractors. Butler testified that Abbott expressed to him a concern regarding the inability to use safety equipment present on the site because of time constraints imposed by Black.

Black counters that plaintiff's cases regarding negligent hiring by a general contractor all involve claims by a third party, not the employee of an independent subcontractor. Black cites *Best v. Energized Substation Serv., Inc.* (1993), 88 Ohio App.3d 109, 115, 623 N.E.2d 158, 162, where the court held that a principal cannot be held liable for negligent selection of the independent contractor in a claim by an employee of the independent contractor.

Plaintiff responds that even if *Best* is the applicable law, the court in that case intimated that such a claim could be asserted if it were shown that the subcontractor's employee relied upon the general contractor to hire competent independent contractors.

Even if we would accept plaintiff's assertion of the law as to negligent hiring, plaintiff has failed to meet its burden to present substantial competent evidence that Black had actual or constructive knowledge that Rick Jarrett lacked the measure of skill necessary to properly perform the work for which he was hired. While plaintiff's experts testified that the Jarrett crew was not qualified to excavate the deeper trenches and that Rick Jarrett was not qualified to be a

safety supervisor on the deeper trenches, these opinions are based upon information gathered after the accident and the opinions are thus made in hindsight.

Further, these opinions do not assert that Black or anyone else had actual or constructive notice of Jarrett's lack of skill. Black first met Rick Jarrett at a preconstruction site that both were bidding on as contractors. This implied to Black that Rick Jarrett must consider himself qualified to be a contractor. Black spoke to Rick Jarrett for two hours and asked him if he would be interested in working on the instant project. Black received a letter from Michael Mozena, an individual with whom Jarrett had previously worked at the Ohio Department of Natural Resources and for whom Jarrett had performed other work. Mozena recommended Jarrett for employment and stated that Jarrett's previous work complied with the standards of the Ohio Department of Natural Resources.

Additionally, Rick Jarrett acknowledged that Black gave him a copy of the contract and the construction plans showing the trenches that were necessary for the project, and also attached copies of the safety requirements necessary when excavating trenches deeper than five feet. Rick Jarrett testified that he felt comfortable and qualified doing that for which he was hired and did not complain to Black or to others that he could not do the job or that he needed assistance. Black did not question Jarrett's ability to excavate, as he had been on the job six months and had installed one hundred sixty laterals without incident.

Even assuming that questions arose during the project regarding the quality of Jarrett's work, including a minor cave-in occurring at a site previously excavated by Jarrett, no witness at trial testified that these incidents resulted from Jarrett's improperly excavating or failing to use safety equipment. Additionally, Jarrett had excavated a few deeper trenches earlier in the project without incident and neither Black nor the engineers on the project criticized Jarrett's trenching practices. Plaintiff's assignment of error on negligent hiring therefore is without merit.

In the final assignment of error, plaintiff argues:

"The trial court erred in excluding several additional items of evidence which were relevant and which reasonable minds could use to support a verdict against one or both of the defendants."

A trial court's admission of evidence is within the sound discretion of the trial court to determine. See *State v. Dennis* (1997), 79 Ohio St.3d 421, 431, 683 N.E.2d 1096, 1105–1106; *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 400–401, 473 N.E.2d 768, 791. Evid.R. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In considering whether the probative value of evidence

outweighs the danger of unfair prejudice under Evid.R. 403(A), the trial court is vested with sound discretion to make such a determination and an appellate court should not interfere with that determination absent a clear abuse of discretion. See *State v. Allen* (1995), 73 Ohio St.3d 626, 633–634, 653 N.E.2d 675, 683–685.

An appellate court finds an abuse of discretion only when it determines that the trial court's attitude was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. In reviewing matters decided under Evid.R. 403,

■ "A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. The trial court must determine whether the probative value of certain evidence and/or testimony is substantially outweighed by the danger of unfair prejudice, or of confusing or misleading the jury." *Cleveland v. Petko* (1996), 112 Ohio App.3d 670, 676, 679 N.E.2d 1162, 1166, quoting *Shimola v. Cleveland* (1992), 89 Ohio App.3d 505, 511, 625 N.E.2d 626, 629–630.

Further, a court of appeals will not reverse a judgment predicated on an erroneous evidentiary ruling unless a substantial right of the party is affected. Evid.R. 103(A).

Based upon the foregoing, this court cannot find that the trial court abused its discretion on any of the evidentiary rulings assigned as error in plaintiff's appeal. Additionally, even if one or all of the evidentiary rulings were deemed erroneous, we cannot find that any of the rulings would affect a substantial right of plaintiff so as to warrant reversal.

■ Plaintiff first asserts that the trial court erred in excluding evidence of OSHA citations issued to Black in January 1992, for the use of improper safety procedures in deep trenching and OSHA citations issued to both Black and Jarrett in October 1992, after Abbott's unfortunate death. Plaintiff contends that the January citation is relevant to demonstrate that Black was put on notice that its employees, including the subcontractor's employees, must employ proper safety procedures in excavating deep trenches. Plaintiff argues that the citations issued to Black and Jarrett after the October 1992 accident were relevant to show that Black actively participated in the work of Jarrett and that Rick Jarrett committed an intentional tort. Plaintiff proposes that these citations were relevant but presents no analysis, case law, or other authority to support the contentions.

■ Generally, a plaintiff cannot admit testimonial or documentary evidence of OSHA violations by the employer as all courts except the Alabama Supreme Court have held such evidence to be prejudicial, irrelevant, and hearsay. Roth-

stein, Occupational Safety and Health Law (4 Ed.1998) 561, Section 513. The Ohio Supreme Court has held that a violation of OSHA does not constitute negligence *per se*. *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 304, 649 N.E.2d 1215, 1216–1217.

Employing the abuse of discretion standard, we cannot find that the trial court erred in excluding evidence of the OSHA violations. While the January citation may be relevant to show that Black was aware that certain safety practices were necessary when performing deep trenching procedures, the citation does not demonstrate that Black in any way owed a duty to Abbott, the employee of a subcontractor. As we have discussed earlier, Black did not directly involve itself with the manner and mode of Jarrett's trenching. Further, evidence of Black's knowledge of safety procedures was already established when David Black, the owner of Black, testified that he was aware of the safety procedures necessary when conducting deep trenching excavations. The January citation was issued against Black due to a failure by Black's employees to slope a trench of sufficient width required for a particular type of soil. Thus, safety procedures were employed, if not to the desired extent. The citation was not issued against Black for a failure by a subcontractor or a subcontractor's employees, but of its own employees. Again, plaintiff cites no caselaw to support that an OSHA citation negates the burden of proof necessary to establish active participation or a duty upon a general contractor to the employee of a subcontractor. Thus, even if this citation were excluded improperly, the result was not prejudicial, as it would not have established a duty upon Black as to Abbott.

Similar to the January citation, the OSHA citation issued to Black after Abbott's death does not aid plaintiff in establishing active participation or a duty owed by Black to Abbott, who was engaged in the subcontractor's work. Black and the entire Jarrett crew testified that Black did not direct the trenching on October 29, 1992, and was unaware of the trenching and safety methods used, or that an individual was in the trench on that day.

Further, the trial court did allow the OSHA investigator to testify in full. Although the investigator was not allowed to refer to OSHA violations specifically, he was allowed to testify as to the proper safety procedures and that the lack of safety procedures on October 29, 1992, violated industry standards. Again, even if the OSHA violations were admitted, they would not have refuted the basis upon which the directed verdict was granted: the lack of active participation or duty owed by Black to Abbott.

With regard to the establishment of intentional tort against Jarrett, the only OSHA violation against him was issued only after the accident occurred.

Plaintiff also contends that the trial court improperly excluded evidence of Black's subsequent completion of the lateral with the proper safety equipment after Abbott's death. Plaintiff contends that this subsequent remedial measure is admissible per Evid.R. 407, as it was not offered to prove that Abbott's death was less likely to occur, but was offered to show Black's active participation over this part of the project and the feasibility of precautionary measures that could have been taken before Abbott died. Plaintiff asserts that Black knew that Jarrett did not have the proper equipment for deep trenching and improperly had Jarrett conduct the excavation of this particular site knowing that a deep trench was necessary.

While plaintiff is correct that evidence of subsequent remedial measures is admissible if offered to prove control or the feasibility of precautionary measures, the issue again is whether it was probative to establish active participation or a duty owing from Black to Abbott as an employee of a subcontractor. Black admitted having some control over Jarrett according to the contract between the parties. Black also admitted to having overall responsibility and supervision over the entire project as per its agreement with the village. As earlier discussed, Ohio law holds that this is insufficient to establish active participation by Black in Jarrett's excavation on October 29, 1992. See *Bond,* 72 Ohio St.3d at 337, 650 N.E.2d at 420–421. Exclusion was not an abuse of discretion as against Black.

Additionally, the fact that Black performed the rest of the installation of the lateral does not show control over Jarrett as necessary to avoid the directed verdict, but again merely shows control over the entire project. The Jarrett crew testified that due to Abbott's death, they were unable to return to the site to complete the job. Black, as general contractor, was responsible for the entire project's completion. Black was forced to complete the lateral when Jarrett could not return. The exclusion of the subsequent remedial measure was not an abuse of discretion, as this evidence was irrelevant to establish active participation by Black at or before the time of Abbott's death.

Plaintiff also contends that the trial court erred in excluding the deposition of Richard Butler, an individual with whom Brad Abbott spoke days before his death regarding the use of safety equipment in the trenches. Butler testified that Abbott told him about a cave-in that occurred in another trench in which he was almost buried sometime before the instant incident. When Butler inquired of Abbott about the use of safety equipment, Butler testified that Abbott told him that safety equipment was present at the site, but the crew felt unable to use it due to time constraints. Plaintiff contends that this was relevant evidence against Jarrett to show Rick Jarrett's knowledge of the substantial certainty of harm. Plaintiff also asserts that this rebuts the trial testimony that Brad Abbott was not involved in a prior cave-in and that the testimony establishes that Brad

Abbott relied on Black to hire Jarrett as a competent subcontractor. Plaintiff cites Evid.R. 804(B)(5), which provides an exclusion to the hearsay rule when the declarant is unavailable as a witness and the statement was made by the decedent, where "(a) the estate or personal representative of the decedent's estate * * * is a party, and (b) the statement was made before the death * * * and (c) the statement is offered to rebut the testimony by an adverse party on a matter within the knowledge of the decedent."

Black does not dispute the correct use of Evid.R. 804(B)(5) by plaintiff during trial. Black asserts, however, that adverse testimony was not presented for which Butler's deposition testimony regarding Brad Abbott's hearsay statements was necessary for rebuttal.

Usually Evid.R. 804(B)(5) statements are not used during a plaintiff's case in chief. The statements can be offered to rebut adverse parties' testimony when the adverse parties are testifying as if on cross-examination in the case in chief. See *Bobko v. Sagen* (1989), 61 Ohio App.3d 397, 409–410, 572 N.E.2d 823, 830–832. Evid.R. 804(B)(5) exists to benefit a representative of a decedent to allow the decedent to "speak from the grave" to rebut testimony of an adverse party. *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 305, 2 OBR 332, 336–338, 441 N.E.2d 845, 850–851.

Abbott correctly asserted Evid.R. 804(B)(5) at the appropriate time. The trial court erred in excluding the deposition testimony.

■ While error for the court to exclude this evidence, even if allowed, it would not have any relevance on plaintiff's claim of negligent hiring.

■ Plaintiff also contends that the trial court erred in refusing to allow an economist to testify at trial as to damages sustained by Brad Abbott for hedonic loss, or the loss of the pleasure of life. Plaintiff cites *Fantozzi v. Sandusky Cement Prod. Co.* (1992), 64 Ohio St.3d 601, 618, 597 N.E.2d 474, 486–487, as support. The trial court found *Fantozzi* distinguishable from the instant case and disallowed the economist to testify as to the loss of pleasure of life by Brad Abbott. The court also refused a jury instruction as to such losses as separate from those damages already allowed in a wrongful death action.

We find that based on our standard of review, the trial court did not abuse its discretion in excluding this evidence.

■ Plaintiff further contends that the trial court improperly excluded the coroner's report, the sheriff's report, and the OSHA investigator's written findings, as they were admissible under Evid.R. 803(8) as public records and reports. We do not find an abuse of discretion with regard to the exclusion of these documents into evidence. As plaintiff acknowledges, the coroner, the

sheriff and the OSHA investigator were allowed to testify in full at trial. They set forth the methods employed in their investigations and stated their conclusions subject to direct and cross-examination.

While plaintiff correctly cites Evid.R. 803(8) as allowing these reports in evidence as official reports and publications, Evid.R. 403 comes into play as well because the reports also contained statements from individuals who did not observe the accident. Although these reports were relevant and subject to the hearsay exception under Evid.R. 803(8), the trial court found that the danger of unfair prejudice, confusion of the issues, and misleading the jury could result if the reports were admitted with these unreliable statements contained within them. Additionally, the reports should be deemed cumulative evidence so as to exclude them under Evid.R. 403(B), as the coroner, the sheriff, and the OSHA investigator all testified in full as to their investigations and conclusions therefrom. Thus, no substantial right was affected by ruling these inadmissible.

■ Plaintiff next asserts that the trial court erred in not admitting a November 13, 1992 construction report that contained a statement that Black used Jarrett's equipment in finishing work at the site. Plaintiff contends that this report was relevant to show that Black actively participated in its subcontractor's work. The assertion is without merit. Black's use of another's equipment after the incident does not establish that Black actively participated in Jarrett's work on the trench that is the subject of this action before the incident occurred. Further, use of the equipment does not in and of itself establish active participation, and plaintiff offers no law or other authority indicating the contrary.

■ Plaintiff lastly argues that the trial court erred in excluding the audio portion of a witness's videotape of the scene. Again, plaintiff sets forth no law to support his claim, except to say that the trial court allowed the video to be presented to the jury at trial in a muted fashion. Mr. Taylor, a friend of the decedent's, took a videocamera to the scene of the accident shortly after it occurred. As he was videotaping the scene and measuring the trench, he offered commentary on the scene that included the measurements. At trial, the videotape was played for the jury, but the audio portion was muted due to concerns over speculative comments and hearsay. Taylor, who was on the stand at the time the video was played for the jury, however, was permitted to comment on each segment of the videotape as it played. Taylor did set forth at trial his measurements on the trench and surrounding measurements that were taken.

■ The trial court refused to allow the videotape into evidence for fear that the jury would not follow an instruction limiting them to watching the tape only without listening to the audio portion. It is within the discretion of the trial court

to determine which exhibits should be sent to the jury room. *C.T. Taylor Co. v. Melcher* (1983), 13 Ohio App.3d 6, 6–7, 13 OBR 6, 6–8, 468 N.E.2d 323, 323–325. Although admittedly it is common practice for a court to send exhibits admitted into evidence into the jury room, in this instance the trial court feared that the jury would not abide by its admonishment not to play the audio portion of the tape that had been excluded from the jury's ear during the trial. This is not an abuse of discretion. Further, the videotape contained scenes of the trench. The jury did not need the video to resolve any confusion they had regarding the scene, as many other exhibits described and depicted the scene in its entirety. Even if the trial court erred in excluding the videotape from the jury's deliberations, we do not find this to affect any substantial right to warrant reversal.

Finally, it should be noted that Black's appellate brief mentions in one line that the trial court improperly overruled its renewed motion for summary judgment and should have granted that motion instead of proceeding to trial because directed verdict was granted in its favor. Black alleges that the same evidence was presented at the time of its renewed motion for summary judgment as existed during plaintiff's case in chief. Black did file a notice of cross-appeal.

At the point in which the renewed summary judgment motion was filed, the trial court ruled that plaintiff had presented genuine issues of material fact so as to allow the case to proceed. Reviewing the record in a *de novo* fashion, we cannot find that the trial court erred in overruling the motion for summary judgment in this voluminous case. Black met the initial burden of establishing that it was entitled to judgment as a matter of law. However, plaintiff met her reciprocal burden of providing sufficient proof to establish that genuine issues of material fact on active participation and negligent hiring may exist.

At trial, however, after presentation of plaintiff's case in full, the trial court found that the evidence did not warrant legal sufficiency to go to the jury. Thus, the trial court erred on the side of caution in overruling the motion for summary judgment and allowing plaintiff to fully develop her case. This cause of action seems to us, as a reviewing court, the wisest one.

For the reasons stated, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.

*Judgment accordingly.*

VUKOVICH, J., concurs.

WAITE, J., dissents in part and concurs in part.

WAITE, Judge, dissenting in part and concurring in part.

While I concur with the majority opinion as it relates to the general contractor, David Black Contracting Services, Inc., and would affirm the trial court's decision as to this appellee, and also agree with the majority as to the evidentiary matters, I must dissent from the majority opinion where it reverses the trial court as to the other appellee, Jarrett Reclamation Services, Inc.

From a review of the record and viewing the evidence in a light most favorable to plaintiff, I believe that the trial court was correct in granting a directed verdict for Jarrett. Pursuant to the applicable law as found in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, in order to find that an employer has committed an intentional tort against an employee, the conduct *must rise above* mere negligence. The employer must know that because of his actions, injuries are "certain or substantially certain to result from the process, procedure or condition * * * mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Fyffe* at 118, 570 N.E.2d at 1112.

Rick Jarrett was most certainly negligent here. He received with his contract for work a packet of materials which included safety requirements for digging trenches deeper than five feet but barely skimmed the materials and thus did not really know what safety procedures were required. He had no experience on a job of this kind or magnitude, yet accepted the job anyway. Further, safety issues were sometimes discussed by Black at biweekly construction meetings which Jarrett occasionally attended. Unfortunately, Jarrett never fully appreciated the hazards of his current job.

Negligence on the part of an employer does not hold that employer liable in intentional tort, however. *Fyffe, supra.* The standard is whether Jarrett knew with "substantial certainty" injury would occur by doing business in the way he had for the past several months and trenching in the manner he had used for several years. There is a plethora of evidence in the record that Rick Jarrett did not have substantial certainty that his employees would be injured. Even if we negate Rick Jarrett's own testimony as self-serving, we cannot escape the fact that plaintiff's own expert, plaintiff's witness, testified not once but several times that Rick Jarrett was unaware of the harm that could result from the operation and his ignorance rendered him incompetent to supervise this job. Since plaintiff's own expert testified that Jarrett did not have the requisite certainty, it is evident that plaintiff did not meet the necessary burden in order to avoid directed verdict in this matter.

Even inferring that Jarrett's work was inherently dangerous and thus that Rick Jarrett must have had some knowledge of the danger involved, plaintiff has failed to demonstrate that Jarrett Reclamation Services or Rick Jarrett himself possessed knowledge which rose to a substantial certainty that injury would be

caused by being in the trench. That Rick Jarrett himself was inside the trenches bears this out.

For the foregoing reasons, I would affirm the trial court decision in total. I do not find from the record that plaintiff presented any evidence that Jarrett knew with substantial certainty that his employees would sustain injury from their working conditions or procedures. Thus, I must dissent with the majority on this issue.