DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Erie County Court of Common Pleas, which entered judgment on a jury verdict in favor of plaintiffs and appellee Federal Insurance/Chubb Insurance Group. Because we find that the trial court erred in not directing a verdict in favor of appellant, we reverse the decision of the trial court.
 {¶ 2} This case stems from a car accident near a road construction site on State Route 2 in Erie County. Plaintiff Kristen Steinmetz was a passenger in a car driven by her husband, plaintiff Paul Steinmetz. The couple's two children, one aged two and one aged three months, were seated in the back in car seats. Paul Steinmetz had stopped his car in response to a traffic back-up in an area approximately one mile from the road construction site. Appellant Gerken Paving Company was performing the construction under a contract with the Ohio Department of Transportation. George Latva approached the end of the traffic back-up (the "queue") and, without slowing down, struck the back of the Steinmetz's car, killing the two children and injuring Paul and Kristen Steinmetz.
The instant case is litigation between Paul and Kristen Steinmetz and appellant in which the Steinmetzes allege (principally) that appellant was negligent in placing signs in the approach to the actual construction site. (The approach area is known in the industry as the "advance warning area.") Appellee is the plaintiffs' insurer under a contract to provide underinsurance coverage. Appellee settled with plaintiffs prior to trial for $5 million.[1] Following a trial, the jury awarded $2.5 million.
 {¶ 3} Appellant appeals from the judgment on the jury verdict, setting forth the following assignments of error:
 {¶ 4} "Assignment of Error I
 {¶ 5} "The trial court erred as a matter of law in not granting a directed verdict in favor of Gerken Paving because there was no evidence as to proximate cause presented at trial.
 {¶ 6} "Assignment of Error II
 {¶ 7} "The trial court committed reversible error both by incorrectly instructing the jury that Gerken Paving had a `non-delegable' duty to maintain the construction zone in the vicinity of the accident site and by failing to give the jury instruction requested by Gerken, which was a correct statement of law.
 {¶ 8} "Assignment of Error III
 {¶ 9} "The trial court erred to the prejudice of appellant when it failed to give a curative instruction or to allow defense counsel to correct the record when plaintiffs' counsel affirmatively misrepresented to the jury that plaintiffs had received no prior compensation for their injuries.
"Assignment of Error IV
 {¶ 10} "There was insufficient evidence to support the jury's verdict.
 {¶ 11} "Assignment of Error V
 {¶ 12} "The jury's verdict was against the manifest weight of the evidence."
 {¶ 13} Appellant argues in its first assignment of error that the trial court erred in not directing a verdict in its favor. Appellant moved for directed verdict after the plaintiffs' case, arguing that the trial court should direct a verdict on both the punitive damages claim and the negligence claim. As to the negligence claim, appellant argued that there was no evidence that appellant's negligence, if any, was a proximate cause of the accident. Appellant renewed its motion at the close of the evidence. The trial court denied both motions. Civ.R. 50(A)(4) provides:
 {¶ 14} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 15} According to the Ohio Supreme Court, in applying Civ.R. 50(A) and deciding a motion for directed verdict, the trial court should neither weigh the evidence nor judge the credibility of witnesses. Wagnerv. Roche Laboratories (1996), 77 Ohio St.3d 116, 119. A decision on a motion for directed verdict is purely a question of law. Id. Since a motion for directed verdict presents a legal question, on review, we apply the same standard as the trial court and review the matter de novo.Abbott v. Jarrett Reclamation Serv., Inc. (1999), 132 Ohio App.3d 729,738, discretionary appeal not allowed (1999), 86 Ohio St.3d 1455.
 {¶ 16} Plaintiffs alleged in their complaint that appellant was negligent in placing signs warning of the road construction. Specifically, plaintiffs alleged that appellant was negligent in the following ways: (1) in failing to provide warning signs alerting drivers to the end of the queue instead of to the beginning of the lane closure (the "taper"); (2) in failing to reduce the speed limit to 55 m.p.h. earlier in the advance warning area; (3) in failing to post signs earlier in the advance warning area warning drivers of a reduced speed zone ahead; (4) in failing to post off-duty Highway Patrol officers in the advance warning area in an attempt to slow down traffic; (5) in failing to use changeable message boards to warn of the end of the queue; (6) in failing to consult with its engineering consulting firm before modifying the engineering firm's original engineering plan; (7) in failing to monitor the traffic plan; and (8) in failing to conduct an engineering analysis of previous accidents in or near the construction site.
In order to recover in negligence against appellant, plaintiffs would need to establish: "(1) the existence of a legal duty, (2) the defendant's [appellant's] breach of that duty, and (3) injury `resulting proximately therefrom.'" See Wallace v. Ohio Dept. of Commerce, Div. ofState Fire Marshal, 96 Ohio St.3d 266, 2002-Ohio-4210, at ¶ 22, quoting Mussivand v. David (1989), 45 Ohio St.3d 314, 318. In this case, appellant contends that the trial court should have directed a verdict in its favor because there was not sufficient evidence of proximate cause to go to a jury. Proximate cause is defined as:
 {¶ 17} "That which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that from which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might have been anticipated." Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 143, quotingCorrigan v. E.W. Bohren Transport Co. (C.A. 6, 1968), 408 F.2d 301, 303, certiorari denied (1969), 393 U.S. 1088.
 {¶ 18} The Ohio Supreme Court has held that an expert testifying as to causation must testify in terms of probability. Stinson v. England
(1994), 69 Ohio St.3d 451, 455, paragraph one of the syllabus; Lorensenv. Greunke (Sept. 22, 2000), Ottawa App. No. OT-00-011. An event is probable if "there is a greater than fifty percent likelihood that it produced the occurrence at issue." Stinson, 69 Ohio St.3d at 455, paragraph one of the syllabus. If an expert testifying as to causation fails to testify in terms of probability, the expert's testimony is incompetent. Id. In other words, an expert's failure to testify as to probability goes to the admissibility of the evidence, not to the weight. Id. It follows, then, that an expert is precluded from giving causation testimony that is conjecture or speculation. See id. at 457. See, also,Schutt v. Rudolph-Libbe, Inc. (Mar. 31, 1995), Wood App. No. WD-94-064 (summary judgment on proximate cause generally not appropriate unless evidence of causation is so "meager and inconclusive that a finding of proximate cause would rest on speculation and conjecture * * *.")
 {¶ 19} In this case, plaintiffs' expert, Dr. William Berg, testified first about the many ways that he thought the signage, the monitoring of the signage, and monitoring of the construction site in general was deficient. He then testified as to how, in his opinion, these deficiencies proximately caused the accident. When asked whether the "substandard engineering work" on the project was a cause of the accident, Berg testified:
 {¶ 20} "In my opinion, it was a causal factor. Certainly not the only causal factor, but the basis for the opinion very simply is that when you have the types of deficiencies in traffic control devices that we described, what engineers know from the study of all types of traffic accidents, all types of traffic situations, is that when motorists are given incomplete, inaccurate information as it relates to hazards that are either unexpected or difficult to be recognized as indicated earlier, the response is either typically there's a good high [sic] probability motorists' response will either be delayed, incorrect or not occur at all.
 {¶ 21} "We know in this particular case Mr. Latva successfully traveled a long distance, traveled the entire length as shown on this exhibit till point of impact without incident, and he had to go up and over hills, he had to follow the curvature of the road and apparently did that without incident.
 {¶ 22} "It's also clear that his response to the stopped traffic was delayed to the point where there was almost a non-response. My analysis shows that at the last minute there was a sharp steering, and so the vehicles collided maybe with a two-foot offset. But there was — as a practical matter, there was no effective — even close to being effective evasive action initiated.
 {¶ 23} "And so in my opinion, the — it's clear that his attention during some portion of the approach to the back of the queue had to have been diverted to something else. Be it conversation with a passenger or could be any number of things. But it's also clear to me that he was not being provided with accurate information and it's not that it was inaccurate, it repeatedly told him the wrong thing.
 {¶ 24} "It kept telling him that everything was still going to be a mile ahead of him with respect to where the collision occurred. So in my opinion, that was a causal factor, the deficiencies in the traffic control, but it was certainly not the only causal factor."
Berg's testimony is not competent as to proximate cause. While he testified that deficient engineering in a construction zone causes a "high probability" that a driver's response will be affected, he did not testify specifically that the engineering work in this case affected Latva's response. Further, his general testimony that the engineering work was "a causal factor" in the accident was not given with any probability. He testified that the engineering work was a causal factor but not the only causal factor. Such testimony would not permit a trier of fact to find that there was more than a 50 percent likelihood that the engineering work caused the accident.[2] Furthermore, his testimony attempting to link the signage to the accident was pure conjecture: Since Latva drove up to the point of impact without incident, he must have been confused by the signs and his confusion must have caused him to collide into the Steinmetz vehicle. Such conjecture is inadmissible to establish proximate cause. Stinson, 69 Ohio St.3d at 457.
 {¶ 25} Appellee also points to the testimony of Richard McGuinness as establishing proximate cause. McGuinness is a traffic engineer employed by ME Civil Engineering, Inc., the engineering firm that appellant hired to design the traffic maintenance plan for this project. Appellee contends that, had appellant placed a 55 m.p.h. sign further down in the advance warning area, Latva would have been going slower and could have avoided the collision. At trial, appellee elicited testimony from McGuinness that a 10 m.p.h. reduction in the speed limit would have given Latva an extra 10.07 seconds to react to the queue in front of him. Appellee was attempting to establish through this testimony that, had Latva had those extra 10.07 seconds, he could have avoided the collision. At trial, appellee's counsel posed the following questions to McGuinness:
"Q Now, if Mr. Latva had been told a mile back `Go 55,' just as you put a sign up there saying he should have been told, Mr. Latva, at the time of the crash, would he have been 10.07 seconds from the crash; isn't that true?
 {¶ 26} "A If he reduced his speed.
 {¶ 27} "Q If he reduced his speed to 55, he would have been 10.07 seconds behind the automobile which contained these children?
 {¶ 28} "A Not exactly, but he would be somewhat behind them. Obviously he — it takes him some time to slow down through the curve there.
 {¶ 29} "Q 2.5 seconds?
 {¶ 30} "A No, not just that. Just the amount of time it takes to decelerate the vehicle from 65 to 55. That's not linear.
 {¶ 31} "Q Mr. McGuinness, do you think if he had those 10.07 seconds, he could have swerved around this vehicle to the right or the left? Forget stopping. Could he have swerved?
 {¶ 32} "Mr. Cavasinni: Objection.
 {¶ 33} "A He probably could have swerved, 10 seconds or not.
 {¶ 34} "Q He probably could have swerved with 1 or 2 seconds, couldn't he?
 {¶ 35} "A It's a big vehicle. It takes a while to get it to move. But yeah, probably.
 {¶ 36} "Q So this traffic plan, 1 or 2 seconds was critical, wasn't it?
 {¶ 37} "A Not on a long — a long tangent stretch with a lot of sight distance, probably not.
 {¶ 38} "Q And if it was a half mile, the signs, warning signs should (inaudible), he would have been 5.03 seconds before the crash, wouldn't he?
"A Approximately.
 {¶ 39} "Q And 5.03 seconds would have given George Latva time to swerve?
 {¶ 40} "Mr. Cavasinni: Objection.
 {¶ 41} "The Court: Overruled.
 {¶ 42} "A And again, he could probably see the tail end of the queue from a half mile back, and that would give him the whole — whatever we figured out."
 {¶ 43} This testimony is not evidence of proximate cause. While McGuinness testified in the abstract that a reduced speed limit affords more response time, he was never asked, nor did he ever testify, that the failure to reduce the speed limit earlier in the advance warning area proximately caused this collision. In fact, McGuinness testified that, regardless of the speed limit, Latva should have been able to see the queue and stop in time.
 {¶ 44} The next question is whether, absent Berg's and McGuinness' testimony, there was any evidence that would cause reasonable minds to differ on the issue of proximate cause. There was not. No witness testified that the signs were confusing. No witness testified that he or she had difficulty appreciating the danger. No witness testified that he or she had trouble stopping in time. In fact, every witness involved in the accident (and one eyewitness to the accident) testified that the signs were not confusing and that they had no trouble appreciating the danger or stopping. There was simply no evidence of proximate cause to send to the jury, and the trial court should have directed a verdict in appellant's favor. We therefore find appellant's first assignment of error well-taken, and we find it unnecessary to address the remaining assignments of error at this time.
Upon due consideration, the decision of the Erie County Court of Common Pleas is reversed, and the case is remanded with instructions to enter a directed verdict in favor of appellant. Appellee is ordered to pay the court costs of this appeal.
 JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Arlene Singer,J., CONCUR.
[1] Prior to trial, the plaintiffs had also recovered from George Latva, the alleged tortfeasor. Plaintiffs also settled with and recovered from M.E. Civil Engineering, Inc., the engineering firm that drew up the traffic maintenance plan.
[2] In a case decided after Stinson, the Ohio Supreme Court interpreted Stinson as indicating that "[a]n analysis of an expert's testimony in terms of whether it expresses a degree of certainty in excess of fifty percent may not in every case be conclusive of the admissibility of the expert's opinion." Galayda v. Lake Hosp. Sys., Inc. (1994),71 Ohio St.3d 421, 430, certiorari denied (1995), 516 U.S. 810. However, the facts of Stinson were somewhat more complicated than the facts of the instant case. In Stinson, the expert was testifying as to the probable cause of the injuries given three possible causes. We therefore conclude that, if Stinson is to be interpreted as it was in Galayda, it is to be so interpreted only in those situations where the expert is testifying about several alternative theories of causation. In the instant case, Berg was simply asked whether appellant's alleged negligence caused the accident; he was not asked to consider and weigh alternative theories of causation. Given this scenario, we read Stinson to define "probability" as it did in its syllabus: a "greater than fifty percent likelihood." See Stinson, 69 Ohio St.3d at 455, paragraph one of the syllabus.