DECISION AND JUDGMENT ENTRY
This is an appeal from a Ross County Common Pleas Court directed verdict in favor of United Electric and Construction Co., Inc., defendant below and appellee herein.
Terry R. Shreve, plaintiff below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT EMPLOYER'S MOTION FOR DIRECTED VERDICT."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF-APPELLANT TERRY SHREVE HAD FAILED TO PRESENT SUFFICIENT EVIDENCE TO DEMONSTRATE THAT THE DEFENDANT EMPLOYER HAD COMMITTED AN INTENTIONAL TORT; AND THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THE EVIDENCE WHICH DEMONSTRATED THAT THE DEFENDANT EMPLOYER HAD COMMITTED AN INTENTIONAL TORT."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF-APPELLANT TERRY SHREVE HAD FAILED TO ESTABLISH THAT THE DEFENDANT EMPLOYER KNEW THAT HARM WAS A SUBSTANTIAL CERTAINTY, AND FURTHER ERRED BY APPLYING THE WRONG TEST TO DETERMINE WHETHER OR NOT PLAINTIFF-APPELLANT TERRY SHREVE HAD ESTABLISHED THAT THE DEFENDANT EMPLOYER KNEW THAT HARM WAS A SUBSTANTIAL CERTAINTY."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN RULING THAT PLAINTIFF-APPELLANT TERRY SHREVE'S EXPERT WITNESS COULD NOT TESTIFY ABOUT THE SUBSTANTIAL CERTAINTY OF HARM RESULTING FROM THE DEFENDANT EMPLOYER'S ACTS."
On May 20, 1998, appellant, one of appellee's employees, was installing sewer lines at the Timberidge Development. To install the sewer lines, the employees dug a ditch. Estimates of the ditch's depth ranged from under five feet to over six feet. No protective measures existed to prevent the ditch from caving in and the excavation did not comply with OSHA requirements for excavations over five feet deep.
While appellant worked in the ditch, some dirt separated from the top of the ditch and struck appellant in the shoulder.
On October 8, 1998, appellant filed a complaint against appellee and alleged that appellee committed an intentional tort. Appellee denied liability.
On July 23, 2001, the trial court held a jury trial. At trial, appellant testified that following the accident, he overheard the site foreman, Edward E. Shreve (Thomas's son), state, "I knew this was going to happen."
Thomas E. Shreve, appellee's president and owner (and appellant's half-brother) testified that he started the company in 1971 and that he had been involved in excavation work for "all [his] life." Thomas explained that he was in charge of testing the soil prior to excavating. He stated that he did not manually test the soil, but that his visual inspection led him to believe the soil was "almost a Class-A soil. It was a hard, dry soil. It was really hard to dig." Thomas testified: "I just know the soil was safe to dig in and it wasn't going to endanger anybody's life."
Thomas admitted that he did not employ any of the protective measures OSHA requires for excavations over five feet. Thomas stated, however, that the ditch was not over five feet deep.
Thomas also testified that he did not know that injury to appellant was a substantial certainty. Thomas explained that his son was working alongside appellant in the ditch. He stated: "But at the same time [appellant] was injured, my son was in the ditch standing shoulder-to-shoulder with [appellant], too, and do you think I would endanger my own son's life or [appellant's] life."
Appellant sought to introduce the testimony of an expert witness, Alan Kundtz, to establish that appellant's injury was a substantial certainty. Prior to admitting the expert's testimony, the parties conducted an extensive voir dire of the witness. During voir dire, appellant's counsel asked the expert the following question:
"I want you to assume the following as true based upon facts admitted in this case. Number one, as of May 20, 1998, the management and ownership of [appellee] knew that OSHA regulations require shoring or sloping of trenches dug greater than five feet in depth. Number two, assume as true that as of May 20, 1998, [appellee]'s management and ownership knew that this was a safety regulation for protection of workers. Number three, assume that with that knowledge [appellee]'s president operated an excavator and dug a trench that was clearly greater than five feet in depth. Number four, assume that there was no shoring or sloping of the trench. * * * * Number five, with that knowledge [appellee]'s foeman instructed [appellant] and other workers to work in the bottom of that trench. Based on those assumptions, do you have an opinion to a reasonable degree of engineering certainty whether harm to a worker position in that trench was a substantial certainty on May 20, 1998."
The expert responded: "There was a substantial certainty that [appellant] would be harmed under those circumstances if there was a cave-in." The expert explained that he based his opinion on the following factors: (1) the trench was greater than five feet deep; and (2) appellee's workers did not manually inspect the soil and thus could not have known the precise soil composition. The expert stated that without knowing the soil composition, appellee "should not have dug that soil with vertical sidewalls."
The expert further stated that by failing to protect the trench walls "[appellee] put [appellant] in substantial harm." The expert stated that in reaching his opinion, he relied upon: (1) the OSHA regulations; (2) his prior experience with soils and excavation work; and (3) the assumption that the soil was a clay composition. The expert stated that clay soils have less of a propensity to slide than other types of soils, but that clay soils still may slide during an excavation. The expert stated:
"If you know that you're dealing with a clay type soil and you nevertheless dig an excavation with vertical sides, then you are asking for trouble. You're asking for this soil to stay in place when its propensity is not to stay in place and that and that really defines the certainty that it is going to fail."
In explaining his credentials, the expert stated that he had an undergraduate degree and a master's degree in civil engineering. He stated that he had several years of: (1) on-site experience observing how trenches are excavated; (2) experience in reviewing and applying the OSHA regulations; and (3) experience in dealing with safety standards and regulations in general. He testified that he obtained a certificate in excavation safety through an eight-hour course provided by the American Society of Civil Engineers. The expert explained that approximately one to two hours of the eight-hour course involved soil analysis. The expert also stated that during his undergraduate years in the late 1960s and early 1970s, he took three soil education courses.
Appellee argued that the expert's opinion was not sufficiently reliable and should not be admitted into evidence. The trial court agreed and did not permit the expert to testify that injury to appellant was a substantial certainty.
On August 17, 2001, the trial court entered a directed verdict in appellee's favor. The court concluded that appellant failed to present evidence that appellee knew that injury to appellant was a substantial certainty. Appellant filed a timely notice of appeal.
 I
Because appellant's first three assignments all address the related issue of whether the trial court erred by granting a directed verdict in appellee's favor, we will address the three assignments of error together.
Within his first three assignments of error, appellant argues that the evidence adduced at trial established that appellee knew that injury was substantially certain to occur. Appellant points out that the following evidence demonstrates that appellee knew that injury to appellant was a substantial certainty: (1) one of appellee's employees stated that he knew the cave-in was going to happen; (2) appellee knew that a danger of a cave-in existed while working in a ditch greater than five feet deep; (3) appellee knew of the OSHA safety standards that governed work performed in a ditch that is greater than five feet deep; (4) appellee knew that the OSHA safety standards exist to prevent a ditch from caving in; and (5) appellee disregarded the OSHA standards.
 A DIRECTED VERDICT STANDARD
Civ.R. 50(A)(4) sets forth the standard for granting a directed verdict. The rule provides:
"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
A motion for directed verdict presents a question of law. Wagner v.Midwestern Indem. Co., 83 Ohio St.3d 287, 294, 1998-Ohio-111,699 N.E.2d 507; Wagner v. Roche Laboratories, 77 Ohio St.3d 116, 119,1996-Ohio-85, 671 N.E.2d 252; Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68-69, 430 N.E.2d 935. "[A] motion for a directed verdict must be denied when `substantial, competent evidence has been presented from which reasonable minds could draw different conclusions.'"Kroh v. Continental Gen. Tire, Inc., 92 Ohio St.3d 30, 31, 2001-Ohio-59,748 N.E.2d 36. A court shall not grant a directed verdictwhen the record contains sufficient evidence going to all the essential elements of the nonmoving party's case. See, e.g., Texler v. D.O. Summers Cleaners,81 Ohio St.3d 677, 679, 1998-Ohio-602, 693 N.E.2d 217; Wells v. MiamiValley Hosp. (1993), 90 Ohio App.3d 840, 631 N.E.2d 642.
In ruling upon the motion, the trial court may not weigh the evidence.Texler, 81 Ohio St.3d at 679. Rather, the court must construe the evidence most strongly in favor of the nonmoving party. See, e.g.,Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284, 423 N.E.2d 467. In construing the evidence most strongly in favor of the nonmoving party, the court must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland,68 Ohio St.3d 521, 526, 1994-Ohio-529, 629 N.E.2d 395; Blair v.Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 10, 358 N.E.2d 634.
Thus, a trial court may not enter a directed verdict against an employee in an intentional tort action when sufficient evidence exists that: (1) the employer has knowledge of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) the employer has knowledge that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. See, e.g., Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. A trial court may enter a directed verdict in an employer's favor when an employee fails to present sufficient evidence establishing any one of the three prongs.
 B INTENTIONAL TORT
Although the workers' compensation provisions provide employees with the primary means of compensation for injury suffered in the scope of employment, an employee may institute a tort action against the employer when the employer's conduct is sufficiently "egregious" to constitute an intentional tort. See Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,172, 539 N.E.2d 1114; see, also, Hannah v. Dayton Power Light Co.,82 Ohio St.3d 482, 484, 1998-Ohio-408, 696 N.E.2d 1044; Van Fossen v.Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 115, 522 N.E.2d 489
(stating that the ultimate question in an intentional tort case is "`what level of risk-exposure is so egregious as to constitute an "intentional wrong"'") (quoting Millison v. E.I. du Pont de Nemours Co. (1985),101 N.J. 161, 177, 501 A.2d 505)); Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 433 N.E.2d 572; Blanton v.International Minerals Chemical Corp. (1997), 125 Ohio App.3d 22, 25,707 N.E.2d 960. When an employer's conduct is sufficiently egregious to constitute an intentional tort, it is said that the employer's act occurs outside the scope of employment, and, thus, recovery is not limited to the workers' compensation provisions. See Blankenship,69 Ohio St.2d at 613 n. 7.
"[A]n intentional tort is `an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur.'" Hannah, 82 Ohio St.3d at 484 (quoting Jones v. VIPDev. Co. (1984), 15 Ohio St.3d 90, 472 N.E.2d 1046, paragraph one of the syllabus). As noted above, a successful employer intentional tort action requires the employee to establish three basic elements:
"`(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.'" Hannah, 82 Ohio St.3d at 484 (quoting Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus).
In determining whether an employer's conduct is sufficiently egregious to constitute an intentional tort, courts must refrain from construing "intentional tort" too broadly. As the court stated in Van Fossen,36 Ohio St.3d at 116:
"`[T]he dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the [Workers' Compensation] Act is not circumvented simply because a known risk later blossoms into reality. * * *'" Id. (quoting Millison v. E.I. du Pont deNemours Co. (1985), 101 N.J. 161, 178, 501 A.2d 505) (citation omitted). The court continued to explain that "intentional wrong" (or tort) should be construed narrowly so as not to subvert the purposes of the Workers' Compensation Act:
"`[I]f "intentional wrong" is interpreted too broadly, this single exception would swallow up the entire "exclusivity" provision of the Act, since virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do whatever it is that may or may not lead to eventual injury or disease. Thus in setting an appropriate standard by which to measure an "intentional wrong," we are careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality — but a reality nevertheless — that industry knowingly exposes workers to the risks of injury and disease.'"Van Fossen, 36 Ohio St.3d at 115-16, 522 N.E.2d at 503 (quoting Millisonv. E.I. du Pont de Nemours Co. (1985), 101 N.J. 161, 177, 501 A.2d 505,513).
In seeking to define "intentional tort," Van Fossen also recognized that although many employment situations involve obvious dangers incident to employment, not all such obvious risks will satisfy the intentional tort standard. The court stated:
"[I]n determining the level of `"risk exposure that will satisfy the "intentional wrong" exception * * * [c]ourts must examine not only the conduct of the employer, but also the context in which that conduct takes place: may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitled the employee to recover only under the Compensation Act?'" Van Fossen, 36 Ohio St.3d at 116
(quoting Millison v. E.I. du Pont de Nemours Co. (1985), 101 N.J. 161,178-79, 501 A.2d 505, 514).
In the case at bar, we agree with the trial court's conclusion that appellant failed to present substantial, competent evidence upon which reasonable minds could reach different conclusions as to whether appellee committed an intentional tort. Reasonable minds can only conclude that appellee's conduct was not sufficiently egregious to rise to the level of an intentional tort and that appellee did not know that injury to appellant was a substantial certainty.[1] Appellant's injury and the circumstances under which it was inflicted is a "fact of life of industrial employment." Van Fossen, supra.
Under the second prong of Fyffe, if the employer knows that the dangerous procedure is substantially certain to cause harm to the employee, intent is inferred.[2] See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175, 551 N.E.2d 962 (stating that when the actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result, then intent will be inferred); see, also, Ailiff v. Mar-Bal, Inc. (1990),62 Ohio App.3d 232, 238, 575 N.E.2d 228, motion to certify overruled,56 Ohio St.3d 704, 564 N.E.2d 707. Thus, the employee need not illustrate that the employer subjectively intended "to accomplish the consequences."Van Fossen, 36 Ohio St.3d at 117.
An employee cannot, however, demonstrate the "substantial certainty" element simply by illustrating that the employer acted negligently or recklessly. Hannah, 82 Ohio St.3d at 484; Van Fossen, paragraph six of the syllabus. Rather, the employee must show that the employer's conduct was more than mere negligence or recklessness. In Fyffe, the court explained:
"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as reckless. As the probability that the consequences will follow further increase, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, paragraph two of the syllabus.[3] The Fyffe court continued:
"* * * [A]cts of the employer that are termed a `high risk' of harm, or `where the risk is great,' could, in most instances, correctly be viewed as acts of recklessness. However, in a given instance, and within a certain fact pattern, such acts could equate to one that is substantially certain to result in harm to the employee, and reasonably raise a justiciable issue of an intentional tort." Fyffe, 59 Ohio St.3d at 117. The Fyffe court further recognized that "some industrial activities that involve a high risk of harm, or where the risk of harm is great, may reasonably encompass situations that fall within the scope of an `intentional tort.'" Fyffe, 59 Ohio St.3d at 117.
As several courts have noted, establishing that the employer's conduct was more than negligence or recklessness "is a difficult standard to meet." McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 246,659 N.E.2d 317.
"The standard has been described as `harsh,' [Goodwin v. KarlshamnsUSA, Inc. (1993), 85 Ohio App.3d 240, 247, 619 N.E.2d 508], and one court has noted that the Supreme Court of Ohio has defined the breadth of employer intentional torts very narrowly out of a concern `that an expansive interpretation could thwart the legislative bargain underlying workers' compensation by eroding the exclusivity of both the liability and the recovery provided by workers' compensation.' Kincer v. AmericanBrick Block, Inc. (Jan. 24, 1997), Montgomery App. No. 16073 (quotingSpates v. Jones (July 12, 1995), Montgomery App. No. 15057)." Taulbee,120 Ohio App.3d at 18.
Proof that the employer knew to a substantial certainty that harm to the employee would result often must be demonstrated through circumstantial evidence and inferences drawn from the evidence. SeeHannah, 82 Ohio St.3d at 485; Emminger v. Motion Savers, Inc. (1990),60 Ohio App.3d 14, 17, 572 N.E.2d 257. The Emminger court explained:
"Proof of the employer's intent * * * is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee as required by Civ.R. 56, the proof of the employer's intent must still be more than negligence or recklessness." Id.
In establishing whether an employer knows that an injury is substantially certain to occur, prior accidents are probative. Taulbee,120 Ohio App.3d at 20. Moreover, "the absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result from the manner in which the job was performed." Id.,120 Ohio App.3d at 20.
A lack of prior accidents, however, "is not necessarily fatal to a plaintiff's case." Id. As the Taulbee court stated:
"`* * * Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of Fyffe." 120 Ohio App.3d at 20
(quoting Cook v. Cleveland Elec. Illum. Co. (1995), 102 Ohio App.3d 417,429-30, 657 N.E.2d 356).
Thus, "`in the final analysis, absent some other evidence indicating that injury is substantially certain to occur, such as a number of prior accidents resulting from the dangerous condition, a determination of substantial certainty turns in large part on the nature of the dangerous condition.'" Taulbee, 120 Ohio App.3d at 21 (quoting Palk v. S.E. JohnsonCompanies (Nov. 9, 1993), Franklin App. No. 93AP-573, unreported). See, generally, Busch v. Unibuilt Indus., Inc. (Sept. 22, 2000), Montgomery App. No. 18175, unreported (concluding that requiring employees to work eight feet above a floor without any restraints or other safety devices is an obvious danger that is substantially certain to result in injury). Accordingly, in reviewing whether the employer knew that harm to the employee was a substantial certainty, courts should focus not only on the existence of prior similar incidents, but also "on the employer's knowledge of the degree of risk involved." Taulbee,120 Ohio App.3d at 21.
As noted above, however, mere knowledge and appreciation of a risk does not establish intent on the part of the employer. Cross v. HydracretePumping Co., Inc. (1999), 133 Ohio App.3d 501, 507, 728 N.E.2d 1104. Furthermore, in demonstrating that the employer knew that injury to the employee was a substantial certainty, "[w]hat a reasonable person should have known is not sufficient." Burkey v. Teledyne Farris Engineering
(June 30, 2000), Tuscarawas App. No. 1999AP030015, discretionary appeal not allowed, 90 Ohio St.3d 1450, 737 N.E.2d 53; see, also, Sanek v.Duracote (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114. Rather, the employee must show that the employer possessed "actual knowledge" that injury to the employee was a substantial certainty. Sanek,43 Ohio St.3d at 172.
In the case sub judice, no evidence of prior similar incidents exist. Thus, we focus upon appellee's knowledge of the degree of risk involved, upon appellee's knowledge of the exact danger that ultimately caused the injury, and upon the nature of the danger.
The evidence in the case at bar reveals that appellee knew of some risk associated with sewer line installation in a ditch at a depth greater than five feet. As stated above, however, knowledge of some risk does not equate with substantial certainty.
Moreover, the evidence does not reveal that appellee actually knew that sewer lines installation in a ditch at a depth greater than five feet would be substantially certain to result in injury to appellant. Throughout the trial, appellee's president continually denied having knowledge that appellant would be injured. The president noted that his son worked alongside appellant and that if he knew that the ditch was substantially certain to cave-in and to injure a worker in the ditch, he would not have permitted his son to work in the ditch.
Furthermore, other courts have recognized that an employer does not necessarily know that injury to an employee is a substantial certainty if the employee works in a ditch without adequate protection. For example, in Bridgeman v. G.A. Simmons (Nov. 30, 2000), Tuscarawas App. No. 2000 AP 060047, the employee was installing a sewer line while working in a fourteen- to fifteen-foot ditch. The trench had been dug a few days earlier and had been exposed to the weather. The ditch had a trench box, but the box left at least five feet of the trench unprotected.
A twelve- to fourteen-foot high portion of the trench subsequently collapsed and injured the employee. The employee filed an intentional tort action against the employer. The trial court granted summary judgment in the employer's favor and the employee appealed.
On appeal, the employer argued "that the mere fact that a danger exists within trench excavation is not sufficient to establish knowledge on the part of the employer that injuries or death are certain to occur." The court of appeals agreed and concluded that the trial court properly granted the employer summary judgment.
In Spates v. Richard E. Jones and Assoc. (July 12, 1995), Montgomery App. No. 15057, the employee was working in a trench when a piece of debris fell from one of the trench's walls and struck the employee's head. The trench was between four and nine feet deep and the employer had not undertaken any measures to protect the ditch. The employee had not received training, other than being told to wear a hard hat. OSHA apparently had issued a violation to the employer. The trial court granted summary judgment in the employer's favor on the intentional tort claim and the employee appealed.
The court of appeals disagreed with the employee that the evidence revealed that the employer knew that injury to the employee was a substantial certainty. The court stated that OSHA violations "do not evince the substantial certainty of harm required to create a genuine issue of material fact." The court also noted that no prior cave-ins had occurred:
"[N]o evidence [exists] that [the employer] had experienced any significant problems with cave-ins or the stability of the trench prior to this incident, or that the type of soil at the site was prone to collapse. [The employer] had tested the soil in the trench with shovels and had concluded that the trench was stable."
Other courts have found, however, that under certain circumstances, working in a ditch without adequate protection may be substantially certain to injure an employee. In Sibert v. Columbus (1990),68 Ohio App.3d 317, 588 N.E.2d 252, the employee was working in an excavation that was approximately ten to twelve feet deep. Id.,68 Ohio App.3d at 319. The dirt consisted of mud and loose fill. The side walls were sloped, except for one wall that was vertical. Before the employee's injury, a partial slide had occurred along the vertical wall.
On the date of the employee's injury, water had seeped into the excavation. The crew used a pump and a compressor to help remove the water. Throughout the day, a pickup truck and a compressor were operating at various times near the excavation. A backhoe sat near the edge of the excavation. While the employee was in the excavation, a chunk of asphalt dislodged from the vertical wall and struck the employee in the back. The employee filed an intentional tort claim against the employer. The trial court directed a verdict in the employer's favor and the employee appealed.
On appeal, the appellate court reversed. The court noted that the employee's expert testified that the prior incident (the vertical wall slide) "was a `direct warning, a flashing red light saying something went wrong with the excavation.'" Id., 68 Ohio App.3d at 321,588 N.E.2d at 255. Also, an expert testified that harm to an employee was a substantial certainty. The court concluded that the expert's testimony presented sufficient evidence of a substantial certainty to withstand a directed verdict.The court also found sufficient evidence of the employer's knowledge of the substantial certainty of injury. The court noted that the foreman, who had at least twenty years of experience as a crew foreman, had positioned the shovel portion of the backhoe inside the excavation to act both as a support for the vertical wall and as an additional escape route. Id., 68 Ohio App.3d at 322. The court observed that the foreman knew of the prior partial slide. Id.
In Abbott v. Jarrett Reclamation Serv., Inc. (1999), 132 Ohio App.3d 729,726 N.E.2d 511, the employee died after a trench caved in and buried him. The employee's wife filed an intentional tort action against the employer and the trial court directed a verdict in the employer's favor.
On appeal, the appellate court determined that reasonable minds could differ as to whether the employer knew that injury to the employee was a substantial certainty. In reaching its decision, the court found the following factors important: (1) the employer had never worked in a situation when employees were required to enter a trench deeper than five feet; (2) the employer did not follow safety procedures; and (3) the employer did not read the safety documents that were provided to him. The court stated: "The critical acts which led to [the employee's] death were that he entered a trench deeper than five feet without a means of egress and without the presence of any safety measure or safety equipment to eliminate the hazard of deep trenching. The evidence clearly establishes that despite the fact that [the employer] had knowledge of and received the safety procedures which pertained to the job in question, [the employer] did not request that such safety equipment be present on the job and retained complete control over this aspect. Consequently, [the employer] continued to have its workers * * * dig a trench over five feet deep when a cave-in was substantially certain to occur, without the benefit of proper safety equipment. The prevention of a tragedy such as occurred in this case is the exact reason why it is necessary to follow the safety procedures as provided." Id., 132 Ohio App.3d at 745.
One judge dissented from the Abbott majority's decision regarding the intentional tort claim. Judge Waite believed that the evidence demonstrated that the employer was negligent, but not that the employer knew that injury to the employee was a substantial certainty. Judge Waite observed:
"[The employee] received with his contract work a packet of materials which included safety requirements for digging trenches deeper than five feet, but barely skimmed the materials and thus did not really know what safety procedures were required. He had no experience on a job of this kind or magnitude, yet accepted the job anyway." Id.,132 Ohio App.3d at 754 (Waite, J., dissenting in part, concurring in part).
Appellant claims that the case at bar is similar to Abbott and thus, that sufficient evidence exists that appellee knew that injury to appellant was substantially certain. While Abbott bears some similarity to the case sub judice, we decline to follow the Abbott majority. Instead, our review of the facts set forth in Abbott leads us to conclude that the employer's conduct was negligent, and maybe reckless, but not sufficiently egregious to constitute an intentional tort.
Appellant also claims that the case at bar is similar to Sibert. Although Sibert is similar in part to the instant case, distinctions do exist, however. In Sibert, the employee presented circumstantial evidence that the employer possessed actual knowledge that an injury was substantially certain to occur. Evidence existed that the employer used the shovel portion of the backhoe as support for the wall of the ditch and as an escape route. Unlike the employee in Sibert, appellant has presented no evidence, direct or circumstantial, that appellee possessed actual knowledge that an injury to appellant was substantially certain to occur. The evidence regarding appellee's actual knowledge demonstrates that appellee did not know that injury to appellant was a substantial certainty. Moreover, in Sibert a partial slide had occurred prior to the employee's injury. The prior partial slide gave the employer actual notice that the wall had a propensity to slide. In the case at bar, no evidence exists that any part of the trench's wall had slid prior to appellant's injury.
Furthermore, we believe that appellant's argument that the foreman's statement demonstrates the substantial certainty element is without merit. As we noted above, knowledge of a risk does not equate with substantial certainty of injury. See Foust v. Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451, 457, 646 N.E.2d 1150 (stating that after-the-fact statements that supervisors thought accident likely to happen evidence of negligence or recklessness but not of substantial certainty of injury).
Appellant further asserts that appellee's violation of the OSHA regulations demonstrate that appellee knew that injury to appellant was a substantial certainty. We disagree. "OSHA citations, standing alone, do not demonstrate an intent to injure." Fleck v. Snyder Brick and Block
(Mar. 16, 2001), Montgomery App. No. 18368; see, also, Vermett v. FredChristen and Sons Co. (2000), 138 Ohio App.3d 586, 603, 741 N.E.2d 954
(refusing to consider an OSHA violation issued after an accident in determining substantial certainty and stating that OSHA does not affect an employer's duty to an employee); Cross v. Hydracrete Pumping Co. (1999), 133 Ohio App.3d 501, 507 n. 1, 728 N.E.2d 1104 (stating that the employee's "attempt to impute actual knowledge through an OSHA violation is misplaced. An OSHA violation might present evidence of negligence.");Neil v. Shook (Jan. 16, 1998), Montgomery App. No. 16422 ("We conclude that the prior OSHA violations do not manifest the substantial certainty of harm required, but are only one of many factors to be considered."). An employer's failure to follow proper safety procedures might be classified as grossly negligent or wanton, but does not constitute an intentional tort. Neil, supra (citing Young v. Miller Bros. Excavating,Inc. (July 26, 1989), Montgomery App. Nos. 11306 and 11307.
Moreover, in Hernandez v. Martin Chevrolet, Inc., 72 Ohio St.3d 302,303, 1995-Ohio-200, 649 N.E.2d 1215, the Ohio Supreme Court explicitly recognized that "Congress did not intend OSHA to affect the duties of employers owed to those injured during the course of their employment." The court stated:
"* * * * The preamble to OSHA reveals the legislation's intended effect on state law. Section 653(b)(4), Title 29, U.S. Code provides:
"`Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.'
"This statutory disclaimer clearly indicates that Congress did not intend OSHA to affect the duties of employers owed to those injured during the course of their employment." Id.
We therefore disagree with appellant that an employer's violation of an OSHA regulation demonstrates that the employer knew that injury to the employee was a substantial certainty.
Appellant nevertheless cites Slack v. Henry (Dec. 1, 2000), Scioto App. No. 00 CA 2704, for the proposition that disregarding safety precautions ipso facto establishes an intentional tort. In Slack, we stated: "Failure to comply with safety regulations is relevant to show that an employer required an employee to perform a dangerous task, knowing of the substantial certainty of injury." The above quotation fromSlack, however, does not state that a failure to comply with safety regulations means that an employer knew that injury to an employee was a substantial certainty.[4]
Furthermore, as the Ohio Supreme Court has recognized, violations of specific safety regulations "often arise from mere employer negligence, thus precluding intentional tort recovery." State ex rel. WinzelerExcavating Co., Inc. v. Industrial Comm. (1992), 63 Ohio St.3d 290, 293,586 N.E.2d 1087. The court also has stated that a "wanton disregard of the duty to protect the health and safety of employees * * * [does not] present an act which is substantially certain to occasion injury." VanFossen, 36 Ohio St.3d at 115.
Appellant further argues that the trial court misapplied the substantial certainty prong of the Fyffe test. In ruling on the directed verdict motion, the court explained the substantial certainty element as follows:
"So what we have is: A, in the abstract, substantial certainty that the accident will occur; B, substantial certainty that death or injury will occur to the employee if the accident does occur and; [sic] C, the employer's knowledge of substantial certainty."
Appellant contends that the trial court's application of the substantial certainty prong "unnecessarily restricts" the intentional tort test "by creating a new set of elements."
Assuming, arguendo, that the trial court misapplied the Fyffe test, any error is harmless. The trial court ultimately reached the right result by concluding that appellant failed to present evidence that appellee knew that injury to appellant was a substantial certainty.
Accordingly, based upon the foregoing reasons, we overrule appellant's first, second, and third assignments of error.
 II
In his fourth assignment of error, appellant argues that the trial court abused its discretion by not allowing appellant's expert witness to testify that injury to appellant was a substantial certainty. Appellant contends that the trial court erroneously concluded that the expert's testimony was not sufficiently reliable.
Appellee asserts that the trial court did not abuse its discretion by excluding the expert's testimony. Appellee argues that the trial court properly determined that the expert's opinion was not sufficiently reliable to be admitted into evidence.[5] Appellee notes that the expert did not take samples of the soil, did not perform any tests upon the soil, and did not set forth an objectively verifiable theory to support his opinion that injury to appellant was a substantial certainty.
Evid.R. 702 governs the admissibility of expert testimony. The rule provides as follows:
"A witness may testify as an expert if all of the following apply:
"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
"(2) The design of the procedure, test, or experiment reliably implements the theory;
"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
The "admissibility of expert testimony is a matter generally within the discretion of the trial judge and will not be disturbed absent an abuse of discretion." Miller v. Bike Athletic Co., 80 Ohio St.3d 607, 616,1998-Ohio-178, 687 N.E.2d 735.
In determining whether an expert's opinion is reliable and admissible under Evid.R. 702(C), the inquiry "focuses on whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." Id., paragraph one of the syllabus. "To determine reliability, * * * a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid." Id. (citing Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469). "In evaluating the reliability of scientific[, technical, or other specialized] evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Id. (citingDaubert, 509 U.S. at 593-94). Although the above "factors may aid in determining reliability, the inquiry is flexible." Id. (citing Daubert,509 U.S. at 594); see, also, Kumho Tire Co., Ltd. v. Carmichael (1999),526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (stating that theDaubert factors "do not constitute a `definitive checklist or test'") (quoting Daubert, 509 U.S. at 593).
In the case at bar, we do not believe that the trial court abused its discretion by determining that appellant's expert's opinion testimony was not sufficiently reliable to be admissible under Evid.R. 702(C). In explaining how the expert concluded that injury to appellant was a substantial certainty, the expert stated that he relied upon the OSHA regulations. The expert stated:
"Well, you've got to look at the purpose of the standards or the purpose of the regulations. The purpose of this particular OSHA regulation is for the protection of workers in the trench. OSHA chose to promulgate this particular standard to protect the worker. By virtue of that, if the standard is violated, then there is an assumption that harm will occur to the worker. Otherwise, the standard would not be written the way it is."
The expert also stated that in reaching his opinion, he relied on the assumption that the soil was clay-based. The expert explained that he applied his knowledge of clay-based soils to conclude that the soil had a propensity to slide. Appellant's expert did not, however, test the particular soil in question or adequately provide or describe the theory behind his opinion that a clay-based soil has a propensity to slide.
Because the expert did not adequately examine the soil or adequately explain and support the theory underlying his opinion, and because the expert did not set forth an objectively verifiable theory to support his opinion, we conclude that the trial court did not abuse its discretion by prohibiting the expert from testifying that injury to appellant was a substantial certainty.
Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Evans, J.: Concur in Judgment Opinion.
[1] The parties appear to agree that reasonable minds could differ as to whether appellant established the first and third requirements underFyffe. We therefore limit our review of the trial court's decision to whether reasonable minds could differ as to the substantial certainty element.
[2] {¶ a} In Patton v. JH Reinforcing and Structural Erectors,Inc. (Dec. 9, 1994), Scioto App. No. 93-CA-2194, unreported, we explained:
 {¶ b} "[U]nder Ohio law, there are two distinct types of intentional tort. The first is where the employer's conduct achieves the exact result desired, i.e., during a quarrel the employer hits the employee in the head with a wrench. In the second type of case, intent is imputed to the employer where it knows the conduct is substantially certain to cause a particular result, even if it is not desired, i.e., employer subjects the employee to highly radioactive material without protective measures."
[3] {¶ a} In Van Fossen, the court explained the intent requirement as follows:
 {¶ b} "[I]ntent is broader than a desire to bring about the physical results, and * * * it extends to those consequences the actor believes are substantially certain to follow from what he does. However, * * * `the mere knowledge and appreciation of a risk something short of substantial certainty is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.'"
{¶ c} Id., 36 Ohio St.3d at 115 (quoting Prosser Keeton, Law of Torts (5 Ed. 1984), 36, Section 8).
[4] Additionally, a failure to comply with safety regulations does not, in all circumstances, establish an intentional tort. When the nature of the work obviously involves inherent and extreme dangers and when the employer fails to provide its employees with any safety precautions, the employer may fairly be said to have knowledge that injury to an employee is a substantial certainty. For example, an employer who requires its employee to enter a burning building without any fire protection could be said to have knowledge that injury to the employee is a substantial certainty. However, when the nature of the work involves some dangers and when the employer fails to provide its employees with any safety precautions, the line between intentional conduct and reckless conduct begins to blur and the resolution of the question should turn upon the individual facts of each case. The inquiry ultimately should focus upon the degree of the danger, the employer's knowledge of the degree of the danger, and the employer's knowledge of and adherence to safety procedures.
[5] Appellee notes that the trial court did in fact permit the expert witness to offer extensive testimony on the subject of soils. The court, however, did exclude the expert's opinion that the injury to appellant was a substantial certainty.